St. John v. Hodges.

W. P. St. John v. Asa Hodges et al.

FOREIGN. *Administration. Bills and Notes. Comity of States. Domestic creditors.* The administrator in the jurisdiction where negotiable notes are *left* at the death of the decedent, has title to them, notwithstanding the debtor resides in another jurisdiction where there is an ancillary administration; and the administrator in the jurisdiction of the debtor's residence has no title or right to control them, unless they actually come to his possession.

*Case in judgment:* Arnold died in Alabama, leaving among his assets in that State certain notes on Hodges, of Arkansas. St. John became administrator of Arnold in Alabama, and turned the notes over to an attorney in Tennessee for collection. Earl became administrator of Arnold in Arkansas, and sued Hodges on the notes, and afterwards, at the instance of the attorney, but without authority from St. John, compromised with Hodges. *Held,* that St. John was not bound by the compromise, and could recover against Hodges.

Cases cited: Swancy v. Scott, 9 Hum., 327; Young v. O'Neal, 3 Sneed, 55.

FROM SHELBY.

Appeal from the Chancery Court.　R. J. MORGAN, Chancellor.

HUMES & POSTON and METCALF & WALKER for plaintiff.

WRIGHT & FOLKES, ADAMS & DIXON and T. M. PETERS for defendants.

MCFARLAND, J., delivered the opinion of the court.

In the year 1866, A. W. Arnold died in Alabama, having his domicil at the time in that State.　W. B.

Spencer was qualified by the proper authority of Alabama, administrator with the will annexed. There came to said Spencer's hands four promissory notes of $5,000 each, payable to said Arnold, on Asa Hodges, who at the time and has since resided in the State of Arkansas. The notes were dated 31st August, 1865, and fell due severally the 1st of January, 1867, 1868, 1869 and 1870. These notes were left by the testator Arnold, as may be safely assumed, among his other assets in Alabama at his death, as they soon after came to the hands of Spencer as administrator. Spencer placed the notes in the hands of P. T. Scruggs, an attorney at law of Memphis, in this State, for collection. The notes remained in the hands of Scruggs, and in March, 1868, Spencer resigned his administration in Alabama, and the complainant, St. John, who was nominated as executor by the will, but who had renounced in the first instance, was qualified administrator *de bonis non* with the will annexed, by the probate court of Blount county, Alabama. After his appointment St. John visited Memphis on two occasions, and conferred with Scruggs in regard to said notes—Scruggs recognizing St. John as the successor of Spencer. On the last of these visits St. John was advised by Scruggs to compromise the debts. The testimony of Scruggs and St. John conflict in some respects in regard to what passed between them on this subject; they agree that Scruggs was not authorized to compromise in the name of St. John. St. John testifies that he told Scruggs that he would not compromise at any sum without express authority from

the court that appointed him in Alabama, and also from the widow and creditors; that he would return to Alabama and consult them, and in no event to compromise without hearing from him. Scruggs testifies that St. John approved the compromise, thought it best for the estate, but would not agree that it should be made in his name without express authority from the probate court of his appointment, but was willing the compromise should be made, provided it could be done in any legal mode so as to relieve him.

These witnesses also differ as to whether the proposition which was finally accepted, was ever made known to St. John. On the 5th of September, 1868, one J. F. Earl, at the instance of Scruggs, took out letters of administration from the clerk of the county court of Crittenden county, Arkansas, upon the estate of Arnold, Crittenden county being the residence of Hodges.

Earl brought an action against Hodges and filed a declaration upon the four notes in question. About the early part of January, 1869, Hodges, Scruggs and Earl met in Memphis and compromised the debts, Hodges paying $1,000, and securing two notes of $2,500 each, payable to Earl, and the four original notes were delivered up. This was without further authority from St. John. Soon after being informed of the fact, St. John returned to Memphis, took out letters of administration, as he charges in his bill, upon the estate of Arnold in Tennessee, and filed the present bill, the object of which is to set aside the compromise and recover the amount of the four ori-

St. John *v.* Hodges.

ginal notes, and. for this purpose to attach the money
paid by Hodges, part of which was in the hands of
Scruggs, and also to attach certain real estate of
Hodges, which it was alleged had been fraudulently
conveyed.    It is charged that the compromise was
without authority and was procured by fraud.    It is
further charged that the appointment of Earl was va-
cated and rendered void before the date o.' the com-
promise, by the Arkansas statutes.

Many important questions have been presented and
ably argued.    The facts upon which these questions
arise, so far as necessary, will be more particularly
noticed in connection with the several questions.    1st,
It is objected, that there is no legal evidence that
St. John was ever appointed and qualified as adminis-
trator of the estate of Arnold, either in Alabama or
Tennessee, and that this evidence is necessary in any
event *in order to show* title and right of action in the
complainant, especially as the notes fell due and the
cause of action accrued after the death of Arnold.
The omission to file the letters was evidently an over-
sight; the grant of administration as charged in the
bill in both States, is distinctly proven by parol tes-
timony, without objection to the court below.    If this
question could be properly raised without a special
plea, we hold, upon the proof, that the character in
which the complainant sues is established.    The par-
ties have litigated their rights in this cause for over
nine years, and they cannot now be dismissed on this
ground without a hearing upon the merits.    But a

22—VOL. 9.

more important question is, assuming St. John to be the legal representative of Arnold's estate in Alabama and Tennessee, and that Earl was the administrator in Arkansas, and that his appointment had not been rendered void at the date of the compromise, was he the legal owner of the four notes in question? Who had the title and the right of control over these notes? Upon the one hand, it is argued that the notes were *bona notabilia* in the jurisdiction in which they were left at the testator's death, that is, in Alabama, and coming to the hands of the administrator there, the title vested in him, and never having parted with this title, he may still maintain it—although to sue in Tennessee, he is compelled to administer here. On the other hand, it is argued that these notes were *bona notabilia* in the jurisdiction of the debtor's residence, and administration having been granted there, complete control was thereby obtained over the assets, and no other authority could interfere, and the settlement made by the legal representative of Arnold's estate in respect to these assets cannot be questioned by any other authority. Upon this question the authorities seem to be conflicting; we do not know that they may be reconciled. But the weight of authority and of reason seems to us to establish, that the title to these negotiable notes vested in the administrator in Alabama, where the notes were left at the testator's death; they were *bona notabilia* there; and the administrator into whose hands they came, had title to them, which was transmitted to his successor. There are many authorities holding that in such cases the

St. John *v.* Hodges.

domestic administrator may assign and transfer such negotiable securities, vesting in the assignee a right to sue in his own name thereon. ʹ Among other cases, we refer to *Grace* v. *Hannah,* 6 Jones' N. C. Law, 96. In that case, Judge Ruffin said, " Bonds, it seems; are *bona notabilia* where the securities are at the death of the intestate;" and it was held that bonds left by an intestate in Georgia on a party in North Carolina, coming to the hands of the Georgia administrator, passed by his assignment, and his assignee could maintain an action in preference to an administrator appointed in North Carolina. The same was held in *Leake* v. *Gilchrist,* 2 Devereux, 73; also in *Morrill* v: *New England Ins. Co.,* 103 Mass., 248; see also, *Andrews* v. *Carr,* 26 Mass., (4 Cush.) 578; *Doolittle* v. *Lewis,* 7 J. C. R., 2 Peters, 239. This proposition may not be easily reconciled with the rule that the administator into whose hands the notes came, cannot sue in another State, unless by special legislative authority. That he may give to his assignee a right which he himself could not exercise, seems inconsistent; yet, such seems to be the law.

But it is argued, that the proposition we have announced is inconsistent with our own cases of *Swancy* v. *Scott,* 9 Hum., and *Young* v. *O'Neal,* 3 Sneed. In the first case, it apeared that a party had obtained a judgment in Kentucky and died; the debtor removing to Tennessee, administration was granted upon the estate of the plaintiff in Tennessee, and suit brought upon the judgment. It was held that the administration was proper and the action maintainable. It was said

that debts of this character were assets in the jurisdiction of the debtor's residence, and not in the jurisdiction where the payment happened to be recorded. It was said, however, that judgments did not stand upon the footing of negotiable notes. As to the latter, it was apparently conceded by Judge McKinney that they might be assigned by an administrator so as to vest an assignee into title; but he thought the administrator, by virtue of his title, could not sue in his own name in another jurisdiction, although his assignee might if no objection was made on the ground of a local administration. The case, therefore, does not decide that debts due upon negotiable notes are not assets in the jurisdiction where they are at the death of the owner.

In the case of *Young* v. *O'Neal,* 3 Sneed, it appeared that Young removed from Tennessee to Illinois and died there. He left in the hands of *an agent in this State notes* upon parties residing here. His personal representative in Illinois came to this State, and O'Neal, one of the debtors, paid him the amount of his note. Afterwards administration was granted in this State and suit brought against O'Neal upon the note. It was held that this voluntary payment to the Illinois executor was no protection. It will be observed that the notes were *not* left in *Illinois,* and never came to the hands of the executor there; on the contrary, were in Tennessee at the testator's death and came to the hands of the administrator here. So this case did not decide that the debt was assets

in this State alone from the fact that the debtor resided here.

It is true, that it was said in both these cases, and we have so held several times, that an administrator is not bound to go beyond his own jurisdiction to collect assets of the estate; his duty and authority are not extra territorial. We apprehend, however, that if the debtors in such cases should have property in the State which might be reached by process of attachment or otherwise, it would be the duty of an administrator into whose hands notes or evidences of debt should come, to proceed to their collection, and he would be liable for not doing so; and if the debtor voluntarily come within the jurisdiction, he might be sued. So that it results, that the administrator in the jurisdiction where the negotiable notes are left, has title to them, notwithstanding the debtor resides in another jurisdiction, and a voluntary payment made to the administrator in his own jurisdiction would be good, as conceded by Judge McKinney in *Young* v. *O'Neal;* and so the debtor might be sued or his property attached, if either be found in the jurisdiction where the administration was granted. But the administrator, notwithstanding he has title, is not required to go beyond his jurisdiction to collect the notes. It should be further observed, that while the residence of the debtor in this State does not necessarily draw to its jurisdiction the control of negotiable paper not actually here, yet our laws do not permit a foreign administrator, as such, to sue in our courts; and if administration here be necessary, we will make

St. John *v.* Hodges.

the debts assets for the benefit of domestic cred-
itors, and not allow them to be removed without the
payment of our own creditors, if there be such.

We hold, then, that St. John had title to these
notes. The question is, did he part with the title?
We will concede for the argument, that Earl's ap-
pointment in Arkansas was not vacated, did this ad-
ministration necessarily draw to its jurisdiction and
control these debts, without actual custody and control
of the notes? The Arkansas statutes allowed a for-
eign administrator to sue there; yet, if an adminis-
trator was appointed there and the notes came to his
hand—especially if with the consent of the foreign
administrator—we should be of opinion that his juris-
diction would be exclusive. See *Noonan* v. *Bradley*,
9 Wallace. But we hold that Earl would have no
title or right to control these notes unless they ac-
tually came to his possession; his administration could
not necessarily draw to its control negotiable notes at
the time held by St. John, who had title to them
with a right to collect, if he could find the debtor
or his property in his jurisdiction. We do not say
that St. John could have sued rightfully in Arkansas,
while Earls' administration existed. And this brings
us to the question of fact, whether Earl ever acquired
custody or control over the notes. We are of opin-
ion he did not; the notes were in the hands of
Scruggs, as the attorney of St. John; he was not
authorized, as we think from the weight of proof, to
surrender them to Earl; we think he never did so;
it does not appear that Earl returned any inventory

of these notes; there is nothing to show that he ever saw them, unless it was at the time of the compromise in the city of Memphis. He states that he was told that the compromise was approved by St. John. He stated at the time that he knew nothing of the merits of the compromise, but as he had become administrator at the request of Judge Scruggs, the attorney of the Alabama administrator, to assist in the prosecution of the claim, he was willing to comply with any arrangement that said administrator might make, and he accordingly signed the papers. We hold that Earl never acquired title to the notes, and for the want of it the compromise was void, and the title of the complainant, St. John, was not lost, and he is, therefore, entitled to recover upon the original notes. The answer of Asa Hodges claims a credit of over $9,700, money paid to Trezevant in discharge of a lien upon the property for which these notes were given, and which as between them Arnold was bound to remove. This payment was made before the notes in question were executed, and the presumption of law is that it was allowed in the settlement, when the last notes were given. The original indebtedness was for a much larger sum; the credit is only supported by the testimony of Asa Hodges, which is excepted to and properly rejected, as it related to a transaction with Arnold in his lifetime. The testimony of Peters is not sufficient to allow the credit, and it must be rejected.

The next question is in regard to the alleged fraudulent conveyance of the real estate attached, situ-

ated in the city of Memphis. Asa Hodges owned this property and conveyed it to John L. Malone, in exchange for lands in Arkansas. While owning the lands in Arkansas, said Asa Hodges, on the 9th of April, 1867, conveyed them to B. N. Hodges, in trust, to secure certain debts specified. Subsequently, Asa Hodges and Malone rescinded their trade, Malone again becoming owner of the Arkansas lands and Asa Hodges of the Memphis property. Malone, however, instead of re-conveying the Memphis property to Asa Hodges, conveyed it to B. M. Hodges, in trust to secure the debts mentioned in the trust deed of the 9th April, 1867, which he had held on the Arkansas land. This was said to be in pursuance of an agreement made at the time, by which the creditors agreed to release their lien on the Arkansas lands in consideration of the agreement that their mortgage was to be transferred to the Memphis property. It is this latter deed that is attacked as fraudulent. It is of date the 28th of November, 1868. The debts secured are as follows: To the Okalona Savings Institution of Mississippi, six notes and bills as follows, to-wit: one note for $2,800, due 15th October, 1867; a bill of exchange for $2,850, due 15th November, 1867, and four notes to said bank for $5,000 each, due 1st January, 1869, 1870, 1871 and 1872, and a note to Mrs. Kate Hodges for $2,000, due the 20th November, 1868. The bill charges that no such debts were in existence; that the deed was a fraudulent device to cover up the property of Asa Hodges. Answers on oath were waived. The answer of Asa Hodges averred that

St. John *v.* Hodges.

there was no fraud; that the debts were contracted and were due to the parties named. The answer of B. M. Hodges, the trustee, avers that *he accepted* the deed, for the benefit *of the creditors named*, and has reason to believe and does believe that the debts were all *bona fide* and are still so, except those since paid. The answer of the Okalona Institution avers that all the notes and bills mentioned were executed and delivered to and are still *held* by that Institution, and are *bona fide* debts, and were given for money loaned by the Institution to Asa Hodges. The answer of Mrs. Kate Hodges and her husband, Fleming Hodges, say that her note for $2,000 was a just and *bona fide* debt, but that it has since been paid, and they disclaim all further interest. It appears in proof that the note to Mrs. Kate Hodges was paid before the deed was executed, and further, that the note for $2,850 and the bill of exchange for $2,850 were all the debts held by the Savings Institution against Asa Hodges, and these had also been paid before the deed was executed; this is in fact admitted in an amended answer of Asa Hodges. The four $5,000 notes were not held by the bank, and were never claimed as debts due the institution, and the president, who is the witness who testifies, says he has no positive recollection of ever seeing the notes. He says that his information was, that such notes were executed and were intended to secure the amounts specified to Capt. Wm. Hodges and his sisters, who we understand to be the children of Fleming Hodges. Fleming Hodges testifies that these are *bona fide* debts, except that one

St. John *v.* Hodges.

of the notes has been paid. He says these debts were executed in settlement of debts due *him* from Asa Hodges, or from a firm of which Asa Hodges was a member. He says no one but *himself* and his *children* have any interest in these debts. In his answer jointly with Mrs. Kate Hodges, he sets up no claim to these debts, and in fact disclaims any interest. under the deed.

Upon this state of the pleadings and proof, we must hold that there are no existing debts secured by this deed of trust. The pleadings claim that these $5,000 notes are due the bank. This is clearly disproven. They cannot be allowed as debts due to Fleming Hodges under his answer and his disclaimer. They are not satisfactorily proven to be due to any one. The original indebtedness, if it existed, was in favor of Fleming Hodges. There appears an indefinite statement of the president of the bank upon information, that they were executed by the direction of Fleming Hodges and made payable to the bank, and were intended for the benefit of his children. The "children" referred to are not parties; the trustee does not claim for them, if indeed it were satisfactorily proven that they have a valid claim. All the other debts are admitted to have been paid before the deed was executed. The result is, that the property was properly attached and is subject to the complainant's demand.

The chancellor's decree will be affirmed with costs